## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WALTER J. COPELAND, JR.**                    **CIVIL ACTION**

**VERSUS**                                      **NO.  12-2801**

**ROBERT TANNER, WARDEN**                       **SECTION "H"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Walter J. Copeland, Jr., is incarcerated in the B.B. Rayburn Correctional Center in Angie, Louisiana.[2]  On June 8, 2005, Copeland was indicted in St. Tammany Parish on the charge of second degree murder.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On March 11, 2005, the victim, Toney Dewayne Sylve, was shot and killed inside his residence in Slidell, Louisiana. The victim's girlfriend, Kelly Callender, was present when the shooting occurred.  She testified that two masked men wearing gloves and dark clothing entered the residence, held her and the victim at gunpoint, and demanded money.  The victim was shot in the chest during the robbery.  Michael Richardson and defendant were subsequently convicted as the perpetrators of the homicide.

State v. Copeland, 2008 WL 5377642, at *1 (La. App. 1st Cir. 12/23/08); State Record Volume 10 of 11, Louisiana First Circuit Court of Appeal Opinion, 2007-KA-2551, December 23, 2008.

On July 31, 2006, the trial court conducted a hearing and denied Copeland's motions to suppress his statement and other evidence, including his identification.[4]  After the court's ruling, Copeland's counsel announced his intention "to take a writ on your

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 11, p. 1.  Co-defendant, Michael Wayne Richardson, was also charged with second-degree murder.  The two co-defendants were tried separately.

[4]St. Rec. Vol. 1 of 11, p. 14; St. Rec. Vol. 8 of 11, pp. 1519 and 1581-82.

denial of my motion to suppress [Copeland's statement].'"[5]   On October 2, 2006, the

Louisiana First Circuit denied Copeland's writ application without opinion.[6] On January

19, 2007, the Louisiana Supreme Court also denied relief without opinion.[7]

On January 29, 2007, Copeland's trial commenced in the Twenty-Second Judicial

District Court for St. Tammany Parish.  On February 3, 2007, the jury returned a verdict

of guilty of the lesser included offense of manslaughter.[8]  The state trial court sentenced

Copeland on May 29, 2007, to 35 years in prison.[9]

On direct appeal, Copeland's counsel asserted three arguments:  (1) The trial court

erred in denying his motion to suppress because Copeland was not advised of the reason

for his arrest or detention. (2) The trial court erred in refusing to instruct the jury

regarding the crime of accessory after the fact. (3) The sentence imposed was excessive.[10]

On December 23, 2008, the Louisiana First Circuit affirmed Copeland's conviction,

finding no merit with respect to claims (1) and (3), and finding that the trial court erred

---

[5]St. Rec. Vol. 8 of 11, p. 1584.

[6]State v. Copeland, No. 2006-KW-1747 (La. App. 1st Cir. 10/2/06); St. Rec. Vol. 11 of 11.  One judge dissented, stating that he "would have ordered a response from the state, ordered relator to supplement his application with the rights waiver form and invited a per curiam from the trial court."

[7]State v. Copeland, 948 So.2d 156, No. 2006-KK-2640 (La. 2007).

[8]St. Rec. Vol. 1 of 11, pp. 18-42.

[9]St. Rec. Vol. 1 of 11, p. 45.

[10]St. Rec. Vol. 11 of 11, Appeal Brief, 2007-KA-2551, 8/18/08.

in failing to give the requested accessory after the fact charge, but that the error was harmless.[11]  On November 20, 2009, the Louisiana Supreme Court denied Copeland's writ application without opinion.[12]

Copeland's conviction became final 90 days later, on February 18, 2010, when he did not seek a writ of certiorari in the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

On August 5, 2009, Copeland's counsel filed an application for post-conviction relief in the state trial court, arguing that Copeland received ineffective assistance of appellate counsel.[13]  On December 4, 2009, counsel filed a supplemental application for post-conviction relief with a memorandum supporting his ineffective assistance claim.[14] On March 30, 2011, the trial court denied Copeland's post-conviction application.[15]  On July 5, 2011, the Louisiana First Circuit denied Copeland's related writ application

---

[11]State v. Copeland, 2008 WL 5377642, No. 2007-KA-2551 (La. App. 1st Cir. 12/23/08); St. Rec. Vol. 10 of 11. One judge dissented, finding that the trial court's error in failing to give the requested accessory after the fact charge was not harmless.

[12]State v. Copeland, 25 So.3d 785, No. 2009-K-0502 (La. 2009); St. Rec. Vol. 10 of 11.

[13]St. Rec. Vol. 10 of 11. In his August 5, 2009 filing, counsel offered no argument in support of his ineffectiveness claim.

[14]Id.

[15]Id.

without opinion.[16]   On March 12, 2012, the Louisiana Supreme Court also denied Copeland's writ application without opinion.[17]

II.   FEDERAL HABEAS PETITION

On November 19, 2012, Copeland's counsel filed a petition for federal habeas corpus relief in which he asserts the following claims:[18]  (1) Copeland's right to effective assistance of counsel was denied when appellate counsel failed to raise the error of insufficient evidence to support the conviction.  (2) Copeland's due process rights were violated when the trial court erroneously denied suppression of Copeland's statement. (3) Copeland's due process rights were violated by the trial court's erroneous refusal to instruct the jury on accessory after the fact. (4) Copeland received an excessive sentence. The State filed a response in opposition to Copeland's petition, conceding that the petition was timely filed, but arguing that Copeland has failed to fully exhaust his state court remedies.[19]

---

[16]State v. Copeland, No. 2011-KW-0794 (La. App. 1st Cir. 7/5/11); St. Rec. Vol. 10 of 11.

[17]State v. Copeland, 85 So.3d 86, No. 2011-KP-1739 (La. 2012); St. Rec. Vol. 10 of 11.

[18]Rec. Doc. No. 1, p. 7.

[19]Rec. Doc. No. 14.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Copeland's petition which was filed in this court on April 16, 2012.

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes – and I find – that Copeland's petition is timely filed.  The State, however, asserts that Copeland's petition is a mixed petition, presenting two claims which were not exhausted in the state courts. Nevertheless, because the unexhausted claims are without merit, I will address them without requiring full exhaustion.  28 U.S.C. § 2254(b)(2).

---

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

IV.    <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir. 2000)),  <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); accord Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (citing Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 1)

Copeland argues that his counsel was ineffective on appeal because he failed to argue that the evidence was insufficient to support his manslaughter conviction.

8

Copeland contends that the evidence showed he was guilty of nothing more than being an accessory after the fact.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Copeland asserts that his appellate counsel erred in failing to attack his conviction in the proper context. He claims that counsel should have argued that Copeland was guilty only as an accessory after the fact because there was insufficient evidence to support a finding that he was guilty of manslaughter as a principal. Instead, counsel attacked the conviction by arguing that the trial court erred in failing to instruct the jury concerning accessory after the fact, thereby leading to a wrongful conviction on the more serious offense of manslaughter. Copeland claims that if the manslaughter conviction had been attacked from the perspective of insufficient evidence, "the appellate court would have reversed his conviction . . . ."[21]

To satisfy the prejudice prong of the Strickland test, Copeland must show that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); United States v. Videa, 224 F.3d 764, 2000 WL 992191, at *1 (5th Cir. 2000); United States v. Garcia, 77 F.3d 857, 859 (5th Cir. 1996). To determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008) (citing Jackson, 443 U .S. at 324 n.16).

---

[21]Rec. Doc. No. 1, pp. 10-11.

In Louisiana, manslaughter is defined as a "homicide which would be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  La. Rev. Stat. Ann. § 14:31(A)(1); <u>State v. Logan</u>, 34 So.3d 528 (La. App.2d Cir. 2010); <u>State v. Quiambao</u>, 833 So.2d 1103 (La. App. 2nd Cir. 2002).  "'Sudden passion' and 'heat of blood' are <u>not elements of the offense of manslaughter</u>; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them." <u>State v. Logan</u>, 34 So.3d at 535 (citing <u>State v. Lombard</u>, 486 So.2d 106 (La. 1986)); <u>State v. Laird</u>, 30 So.3d 1167 (La. App. 3rd Cir. 2010) (emphasis added).  Thus, it was the State's burden to prove that Copeland was a principal to the crime of second degree murder.  <u>Copeland</u>, 2008 WL 5377642, at *4.  It falls to the defendant, however, to prove the mitigatory factors of "sudden passion" or "heat of blood."   <u>State v. Robinson</u>, 754 So.2d 311 (La. App. 2nd Cir. 2000).

Under Louisiana law, second degree murder is "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm."[22]  La. Rev. Stat. § 14:30.1(A)(1).  The phrase "specific intent" is defined as the state of mind in

---

[22]This was the instruction provided to jurors.  St. Rec. Vol. 7 of 11, p. 1481.

which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. § 14:10(1).[23]

Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989). Specific intent to kill can also be implied by the intentional use of a deadly weapon, such as a knife or gun. State v. Collins, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) (citing State v. Brunet, 674 So.2d 344, 349 (1996)).

In addition, Louisiana law provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."[24] La. Rev. Stat. § 14:24.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's

---

[23]This was the instruction provided to jurors. St. Rec. Vol. 7 of 11, p. 1480.

[24]This was the instruction provided to jurors. Id.

determination of the weight of evidence is not subject to appellate review.  An appellate

court will not reweigh the evidence to overturn a factfinder's determination of guilt.  State

v. Taylor, 721 So.2d 929, 932 (La. App. 1st Cir. 9/25/98).

At trial, Terrence Hess, who lived next door to the victim's home, testified that

Copeland and Michael Richardson came to his home on the date of the shooting.[25]  Hess

testified that Richardson said that they intended to "rob some drug dealer."[26]  Hess stated

that Copeland also participated in the conversation regarding the plans to rob the "drug

dealer," the victim, Toney Sylve, who was Hess's next door neighbor.[27]  Hess stated that

he was asked to participate in the robbery, but did not do so.[28]  Hess's testimony in this

regard was corroborated by his girlfriend, Cynthia Lemoine, who testified that Hess was

in their bedroom when the shots were fired.[29]  Hess stated that the plan was that "they

[Richardson and Copeland] were going basically to wait on the guy to come outside,"

with Copeland waiting outside for the guy and Richardson going inside to prevent the

girl from going outside.[30]  The plan, however, went awry.  Kelly Callender, the victim's

---

[25]St. Rec. Vol. 4 of 11, p. 649.

[26]Id. at 652.

[27]Id. at 653 and 662 and 666.

[28]Id. at 665-66.

[29]St. Rec. Vol. 3 of 11, p. 617.

[30]St. Rec. Vol. 4 of 11, p. 670.

girlfriend, testified that two men entered the house, and one held a gun on her while the second held a gun on the victim.[31]  Hess stated that after hearing the shots he looked out the window and saw Copeland and Richardson running to Richardson's car.[32]

In contrast, Copeland flatly denied any involvement in the incident, testifying that he neither robbed nor shot the victim.[33]  As the Louisiana First Circuit stated:

> Defendant's hypothesis of innocence was presented through his own testimony at the trial. He testified that although he was aware of discussions by Richardson and Hess (about possibly robbing the victim), he did not accompany them to the victim's residence nor did he participate in the crimes.  According to defendant, he, Hess and Richardson were standing outside Hess's residence (located next door to the victim's residence) when they observed what Hess believed to be a drug transaction between the victim and a passenger of a white Ford Bronco.  After having discussed various financial issues, Richardson suggested that they rob the victim. According to defendant, Richardson displayed a rifle in his vehicle and a pistol in his possession.  Defendant claimed that upon deciding not to be involved in the robbery or its planning, he walked away from the area.  He claims he did not again encounter Richardson until later, when Richardson drove up next to him on the street and instructed him to get into the vehicle. Defendant admitted that he entered the vehicle and rode with Richardson back to Mississippi. In Mississippi, defendant assisted Richardson in burning several items taken from the victim's residence. According to defendant, he was paid approximately $200.00 in "hush money."[34]

---

[31]St. Rec. Vol. 3 of 11, p. 538-39

[32]Id. at 675.

[33]St. Rec. Vol. 6 of 11, pp. 1279-80.

[34]Copeland, 2008 WL 53776342, at *4.

Thus, the jury was faced with a credibility contest, which they were fully empowered to resolve.  Based upon their verdict, jurors clearly found the testimony of Hess, which it judged credible and which was corroborated in part by Lemoine and Callender, more credible than Copeland's testimony,[35] which the jury clearly did not credit. I find that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Copeland aided and abetted Richardson and was a principal to <u>second degree murder</u>.  Instead, the jury convicted Copeland of only the <u>lesser</u> offense of manslaughter,[36] as it was justified in doing.

For all of the foregoing reasons, Copeland was not prejudiced by appellate counsel's failure to raise an insufficiency of evidence claim, and any failure to do so cannot be viewed as constitutionally ineffective.  Copeland is not entitled to federal habeas relief on this claim.

---

[35]The jury apparently believed Hess even though jurors were informed that Hess had a charge of aggravated burglary pending against him which, in exchange for his testimony, "could be dropped." St. Rec. Vol.  4 of 11, pp. 648-49.

[36]As discussed above, the prosecution had the burden of proving that Copeland was a principal to the crime of second degree murder. It was the defense that bore the burden of proving "mitigating factors" to support a lesser manslaughter verdict. Thus, the jury's verdict reflects that defense counsel was successful at least in part and is a circumstance supporting a finding of effectiveness on the part of trial counsel that would have been futile for appellate counsel to challenge.

## VI.   SUPPRESSION OF COPELAND'S STATEMENT (CLAIM NO. 2)

Copeland admits that he was fully advised of his Miranda rights before providing police with a statement.[37]   Nevertheless, Copeland contends that his statement should have been suppressed because he was not advised of the reason for his detention. Copeland complains that the failure to advise him of the reason for his detention violated La. Const. Art. I, §13[38] and La. Code Crim. P. art. 218.1.[39]

To the extent Copeland argues that his statement was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. See Swarthout v. Cooke, ___U.S. ___, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission of evidence, provided

---

[37]Record Doc. No. 1 at p. 11 of 17.

[38]Louisiana Const. Art. I, § 13 provides in pertinent part: "When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel."

[39]Louisiana Code Crim. P. Art. 218.1 provides: "When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.

those procedures do not infringe on a constitutional guarantee.  Burgett v. Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings under state law, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236–37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.).  The United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial."  Gonzales, 643 F.3d at 430 (quotation omitted).

This issue presents a mixed question of law and fact.  Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000).  Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

My research has uncovered no Supreme Court precedent stating that a defendant's statement given after advice of his Miranda rights is inadmissible if it was provided without being advised of the reason for detention.  Thus, even if Copeland's allegation

that he was not advised of the reason for his detention were true, he would not be entitled to federal habeas relief. The trial transcript, however, refutes Copeland's allegation. Deputy Lenny Thompson, the officer who arrested Copeland, testified that he told Copeland why he was being arrested.[40]  Similarly, Detective Dale Galloway, the officer who advised Copeland of his Miranda rights, testified that he informed Copeland that he was being questioned in connection with "the murder of Mr. Sylve."[41]

Under these circumstances, there is no possible basis to conclude that the state courts' refusal to suppress Copeland's statement was erroneous, either under state law or the due process standard. The state courts' denial of this claim does not represent an unreasonable application of Supreme Court precedent to the facts of this case.  Copeland is not entitled to federal habeas corpus relief on this claim.

VII.   JURY CHARGE (CLAIM NO. 3)

Copeland argues that the trial court erred in failing to instruct the jury regarding the definition of accessory after the fact as provided under La. Rev. Stat. § 14:25.[42]

---

[40]St. Rec. Vol. 5 of 11, pp. 977.

[41]St. Rec. Vol. 6 of 11, p. 1076.

[42]Section 14:25 provides in pertinent part:
    An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.

Copeland contends that he would have been found guilty only of being an accessory after the fact, rather than guilty of manslaughter, if the jury had properly been instructed.

The record is clear, as the state appellate court recognized, that the jury was <u>not</u> instructed concerning the law of accessory after the fact, and that Copeland's counsel both filed a pretrial motion to enter a guilty plea as an accessory after the fact <u>and</u> (after that motion was denied) "requested that the definition of accessory after the fact be included in the jury instructions." <u>State v. Copeland</u>, 2008 WL 5377642, *4 (La. App. 1st Cir. Dec. 23, 2008). Generally, trial court errors of this sort are subjected to harmless error analysis.

> In <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we rejected the view that all federal constitutional errors in the course of a criminal trial require reversal. We held that the Fifth Amendment violation of prosecutorial comment upon the defendant's failure to testify would not require reversal of the conviction if the State could show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." <u>Id</u>., at 24, 87 S.Ct., at 828. The <u>Chapman</u> standard recognizes that "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

<u>Sullivan v. Louisiana</u>, 508 U.S. 275, 278-79 (1993).

A trial court's error in charging a jury is an error subject to a harmless-error analysis. <u>Id</u>. at 279. As the Supreme Court explained:

> [T]he question . . . is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect

it had upon the guilty verdict in the case at hand.  See Chapman, supra, 386 U.S., at 24, 87 S.Ct., at 828 (analyzing effect of error on "verdict obtained").  Harmless-error review looks, we have said, to the basis on which "the jury actually rested its verdict." Yates v. Evatt, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991).  The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.

Id.

On direct appeal, the Louisiana First Circuit concluded that the trial court had

erred in not instructing the jury with respect to the crime of accessory after the fact.

[A]lthough accessory after the fact is not a verdict responsive to a charge of second degree murder . . . there is some evidence in the record, particularly the defendant's version of the events as presented in his trial testimony, from which a jury could have reasonably inferred the defendant to be guilty of the offense of accessory after the fact and not of being a principal to the killing. As such, the trial court was obligated to instruct the jury as to the law applicable to this theory of the defense.

Copeland, 2008 WL 5377642, *5 (citations omitted).  The state appellate court, however,

found the error harmless, stating:

The record reflects there was sufficient discussion at trial, without the special jury charge, to inform the jury that if it believed defendant was only guilty of accessory after the fact, it should return a verdict of not guilty. Since the only verdicts given the jury for consideration were guilty as charged of second degree murder, guilty of manslaughter, guilty of negligent homicide, and not guilty, it was not absolutely necessary for the trial court to have given an explicit instruction on accessory after the fact in order to convey to the jury the definition of accessory after the fact, and also that an accessory finding must result in a verdict of not guilty. During opening and closing arguments, defense counsel repeatedly advised the jury that, if anything, defendant was guilty of the offense of accessory after the

22

fact. Thus, we find that the guilty verdict in this case was obviously based upon a finding that defendant was involved in the commission of the offense as a principal and was surely unattributable to the omission of the accessory after the fact instruction.

Id. (emphasis added).

In both his opening and closing arguments, defense counsel emphatically stated that Copeland was guilty of nothing more than being an accessory after the fact, thereby arguing that the jury must render a not guilty verdict.  During opening arguments, defense counsel stated:

> My client is guilty of being an accessory after the fact, because the evidence is going to show that he aided and abetted someone who committed a felony.  If someone commits a felony and you know that they did that, shot somebody, robbed somebody, took somebody's goods, and you assist them, aided them in some way to avoid being caught, tried, convicted, then you are a accessory after the fact, at this point.  And my client is an accessory after the fact . . . .[43]

Counsel stressed this point again during closing arguments.  Counsel repeatedly informed jurors of the definition of accessory after the fact, admitted that his client was guilty of being an accessory after the fact, and explained that because a finding of guilt on the charge of accessory after the fact was not an option, they must return a verdict of not guilty.

> There are options for you and these are your only options here, so I want to tell you now so there is no confusion later.  The choices will be for this jury and this case will be (sic) second-degree murder, manslaughter,

---

[43]St. Rec. Vol. 3 of 11, p. 526.

negligent homicide, or not guilty.  And the Judge is going to instruct you on this.

Will [Walter Copeland] has offered to plead guilty . . . to accessory after the fact . . . .

He admits his guilt to this . . . but this isn't something you can decide on. . . .[44]

Accessory after the fact, this is a person who after the commission of a felony, [in] this case a murder robbery, who shall, if he in fact harbors, conceals, or aids the offender knowing that the offender has committed a felony and with the intent that he may avoid [arrest] or escape, that is the person that committed the felony, escape from arrest, trial or conviction or punishment.  That's an accessory after the fact.[45]

. . . .  He's an accessory after the fact.  Why?  One, because any person after the commission of a felony shall harbor - - he put him up [on] the night after, let him spend the night after the killing and shooting occurred; concealed or aided the offender - - he burned the evidence.  He was out there burning the evidence.  That is why we have an accessory after the fact.  He did aid the offender, at this point, by burning the evidence . . . .  He's guilty of accessory after the fact.[46]

Unless you can say he was involved as a principal to the second-degree murder . . . the verdict has to be not guilty . . . .  If you are not convinced . . . that Will did this beyond a reasonable doubt, that is commit the murder robbery, then the verdict has to be not guilty.[47]

In Shamah v. United States, 2013 WL 1343913, at *5 (N.D. Ill. 4/2/13), petitioner

argued "that counsel was ineffective for failing to seek a theft instruction, which the jury

could then compare to the robbery instruction, and find petitioner guilty of the lesser

---

[44]St. Rec. Vol. 7 of 11, pp. 1425-26.

[45]Id. at pp. 1427-28.

[46]Id. at pp. 1458-59.

[47]Id. at p. 1460.

predicate crime."  The court determined that petitioner had failed to show that he was prejudiced by the absence of the instruction, reasoning:

> [P]etitioner's counsel presented the theft theory of the defense throughout the case and in detail in closing argument. The jury was well aware of petitioner's defense theory that he was not guilty of robbery, but rather of theft and conspiracy to commit theft.  The absence of the jury instruction did not deprive defendant of the ability to present his defense to the jury.

Id. at *6 (emphasis added).[48]

Based upon counsel's strenuous and repeated arguments during both opening and closing statements, including a largely accurate definition of the meaning of accessory after the fact, I find the jury was well aware of petitioner's defense theory that he was guilty only as an accessory after the fact, rather than guilty of being a principal to murder or any other lesser included offense with which it was presented. I find that the guilty verdict rendered by the jury was surely unattributable to the trial court's error, which must be viewed as harmless.

-------------------

[48]In Shamah, because the jury charge issue was raised in the context of an ineffective assistance of counsel claim, rather than in the context of a trial error claim, the court determined that petitioner was not prejudiced, rather than finding that the error was harmless. However, the two findings, lack of prejudice and harmless error, are closely related. When faced with both a harmless error issue and an ineffectiveness issue based upon an erroneous jury charge, the United States Court of Appeal for the Third Circuit observed:

> [T]he ultimate issue under either test reduces to determining what effect, if any, the erroneous instruction had on the jury's verdict.  Accordingly, if Whitney [the petitioner] demonstrates that the erroneous instruction . . . was not harmless . . . , he has also demonstrated that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

Whitney v. Horn, 280 F.3d 240, 258 (3d Cir. 2002) (citations and quotation omitted), cert. denied, 537 U.S. 1195 (2003). See also Smith v. Dixon, 14 F.3d 956, 976 (4th Cir.) (en banc) (prejudice inquiry under Strickland is essentially the same inquiry as the harmless error inquiry), cert. denied, 513 U.S. 841 (1994).

Accordingly, the state courts' rejection of Copeland's claim in this regard does not represent an unreasonable application of Supreme Court precedent to the facts of this case.

VIII.   <u>EXCESSIVE SENTENCE (CLAIM NO. 4)</u>

Copeland argues that his 35-year prison sentence for manslaughter was excessive given that "[h]is role in the offense was admitted in the record to be an accessory-after-the-fact."[49]  Further, Copeland argues that his young age[50] and his first felony offender status are factors that militated against a 35-year prison sentence.

The Louisiana First Circuit addressed this claim in Copeland's direct appeal.[51] The court noted that the trial court properly considered mitigating factors, including that Copeland was a "'young man'" and had experienced problems during his youth.[52]  The trial court also considered aggravating factors, noting that the offense involved purposely entering the victim's home to commit the crime.[53]  The Louisiana First Circuit concluded:

> Considering the reasons for sentence provided by the trial court and the circumstances of the instant offense, we find no abuse of sentencing discretion in this case.  Reviewing the facts and circumstances of the senseless killing, we cannot conclude that the trial judge abused his discretion in imposing the thirty-five year sentence, which is five years

---

[49]Record Doc. No. 1, p. 16.

[50]Copeland was 18 years old when he was charged with the crime. St. Rec. Vol. 7 of 11, p. 1507.

[51]<u>State v. Copeland</u>, 2008 WL5377642, at *1-*4; St. Rec. Vol. 10 of 11, No. 2007-KA-2551.

[52]<u>Copeland</u>, 2008 WL 5377642, at *6; St. Rec. Vol. 7 of 11, p. 1512.

[53]<u>Id.</u>; St. Rec. Vol. 7 of 11, p. 1513.

> below the maximum sentence that could have been imposed on the manslaughter conviction.  In light of the harm to society and to the victim, the sentence does not constitute the needless imposition of pain and suffering, nor does it shock our sense of justice.

Copeland, 2008 WL 5377642, at *7.

For purposes of federal habeas review under the AEDPA standard, an excessive sentence claim presents a question of law.  Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F. 2d 921, 923-24 (5th Cir. 1987); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F. 2d at 923-24)  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence, unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); United States  v. Forbes, 282 F. App'x 324, 325 (5th Cir. 2008).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed

on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, 131 S.Ct. 2466 (2011); Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996); McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

As the Louisiana First Circuit observed, Copeland's sentence was within the statutory range. Louisiana law provides that a person convicted of manslaughter shall be imprisoned at hard labor for not more than forty (40) years. La. Rev. Stat. Ann. § 14:31. In addition, a crime of violence is defined as an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person of another. La. Rev. Stat. Ann. § 14:2(13). Louisiana statutory law lists both second degree murder, Copeland's original charge, and manslaughter as crimes of violence. Id.

Because Copeland's sentence was within the statutory parameters, the court must next consider proportionality when compared with sentences imposed in similar cases. The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" Ewing v. California, 528 U.S. 11, 23 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case

will reach the level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

Copeland suggests that because he should have been convicted only as an accessory after the fact, he should have been sentenced in accordance with the lesser crime.  However, it is not this court's place to second-guess the jury's finding that Copeland was guilty of manslaughter.  Copeland was convicted of manslaughter and properly sentenced in accordance with his manslaughter conviction.

As for Copeland's youth, this factor was specifically considered by the trial court[54] and perhaps is the reason the court did not receive the 40-year maximum sentence.  With respect to his first felony offender status,[55] it is not a rarity in Louisiana for first felony offenders to receive the maximum 40-year sentence when convicted of manslaughter.  See State v. Johnson, 41 So.3d 1188, 1209 (La. App. 4th Cir. 5/26/10) ("court has repeatedly upheld maximum forty-year sentences for manslaughter imposed on first offenders.") (citing State v. Jones, 814 So.2d 623 (La. App. 4th Cir. 3/20/02) (maximum 40-year sentence imposed on first offender charged with second degree murder but convicted of manslaughter in shooting death of man), writ denied, 829 So.2d 424 (La. 2002); State v. Williams, 776 So.2d 604 (La. App. 4th Cir. 12/13/00) (maximum

---

[54]See discussion supra at p. 26.

[55]It was noted at Copeland's sentencing that while his manslaughter conviction was his first, he was "facing two other felony charges." St. Rec. Vol. 7 of 11, p. 1511. Copeland also had a history of violence against his mother. Id.

sentence imposed upon first offender charged with first degree murder but convicted of manslaughter when he opened fire in the apartment of a man), writ denied, 812 So.2d 667 (La. 2002)).

In this case, Copeland received five years less than the maximum sentence which could have been imposed. Applying the factors and legal standards discussed above, I find that Copeland's 35-year sentence was not unconstitutionally excessive. The state courts' evaluation of this issue fully comported with applicable Supreme Court precedent. Copeland is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Walter J. Copeland, Jr., for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[56]

        New Orleans, Louisiana, this ____27th____ day of June, 2013.

                                _____

                                 JOSEPH C. WILKINSON, JR.

                        UNITED STATES MAGISTRATE JUDGE

---

[56]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.